UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ANDREW J. DITCH, )
)
    Plaintiff, )
) Case No. _____
    v. )
)
KENNETH R. FEINBERG, )
FEINBERG ROZEN, LLP, D.B.A. )
GULF COAST CLAIMS FACILITY, and )
WILLIAM G. GREEN, JR., )
)
    Defendants. )
)

2:13-cv-531-FtM-29UAM

## NOTICE OF REMOVAL

Defendants hereby give notice under 28 U.S.C. §§ 1331, 1332, and 1441 of the removal of the above-captioned case, currently pending in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, to the United States District Court for the Middle District of Florida. This Court has original jurisdiction over this case under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

## BACKGROUND

1. Plaintiff served his State Court Complaint filed in Lee County Circuit Court (the "State Court Action") on Defendant Green on June 14, 2013, and on the other Defendants on June 17, 2013. Exhibit 1, *infra*.

2. The Complaint (Exhibit 2, *infra*) recites the fact of the 2010 oil spill in the Gulf of Mexico due to the explosion and fire aboard the Deepwater Horizon drilling rig (Compl. ¶¶ 1, 34); that BP Exploration & Production, Inc. ("BP") is a "responsible party" for the spill under the Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.* ("OPA") (*id.* ¶¶ 2, 35); that OPA requires a responsible party to establish a procedure for the consideration and possible payment of claims for damages resulting from the spill (*id.*); that, at the request of the White House and BP,

Defendant Kenneth Feinberg, acting through Defendant Feinberg Rozen, LLP, established the Gulf Coast Claims Facility ("GCCF") "to independently administer and where appropriate settle and authorize the payment of certain claims asserted against BP" (*id.* ¶ 38); that Defendants Feinberg and Feinberg Rozen "replaced the original BP claims process and commenced performing BP's obligations under OPA with respect to private economic loss claims" (*id.* ¶ 41); that Defendant Green is a "Liaison" to the GCCF and "Overseer" of seafood business claims to the GCCF (*id.* ¶ 33); and that, on December 6, 2010, the GCCF denied Plaintiff's claim for financial loss as a result of the oil spill. *Id.* ¶ 63.

3. The Complaint alleges that the Defendants have failed in various respects to comply with OPA in handling Plaintiff's claim. Thus, Plaintiff alleges that Defendants –

> have fraudulently stated that the protocol under which GCCF operates "is structured to be compliant with OPA and apply the standards of OPA" (*id.* ¶¶ 3, 60, 71, 74, 101);
>
> have committed fraud by failing to advise Plaintiff that "no claimant should receive any less compensation in the GCCF claims process than they are entitled to under OPA" and that "under OPA * * * any acceptance for a lesser amount [than the claim submitted] *shall not* preclude the claimant from pursuing future recovery" in court or from the federal Oil Spill Fund (*id.* ¶ 23, 98);
>
> have fraudulently required Plaintiff to prove "'proximate causation' between his damages and the Deepwater Horizon oil spill incident" (*id.* ¶ 77) when "OPA is a strict liability statute" and requires only that a claimant "show that his or her damages 'resulted from' the oil spill" (*id.* ¶ 76);
>
> have fraudulently "fail[ed] to provide a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days" because "[a] single six-month emergency advance payment for lost income is in violation of OPA" (*id.* ¶¶ 82, 86);
>
> have violated OPA by not accepting claims for Emergency Assistance Payments after November 23, 2010 (*id.* ¶ 82);
>
> have violated OPA by "offering Plaintiff the opportunity to submit a claim for a single final settlement payment" (*id.* ¶¶ 87-89);

2

have fraudulently stated "that no claim may be submitted to the GCCF 'more than three years after the date the Protocol becomes operative'" because OPA permits claims brought "within three years after the date on which the loss" and its connection with the spill is discoverable (*id.* ¶¶ 90-91); and

have fraudulently required a full release of claims in return for payment, in violation of OPA (*id.* ¶¶ 95-98).

4. Plaintiff specifically alleges on the face of his Complaint that the "GCCF's 'Release and Covenant Not to Sue' Requirement violates OPA, State Contract Law, and is contrary to public policy." *Id.* ¶ 12. OPA is a federal statute and thus the allegation in that paragraph alone meets the well-pleaded complaint rule applicable to federal-question based removals. *See also id.* ¶¶ 82, 87.

5. Additionally, Plaintiff's causes of action purport to state claims under Florida common law, but those also all specifically allege and unavoidably depend on finding a violation of OPA. Thus, for example, Counts I and II, for Gross Negligence and Negligence, assert that Defendants owe Plaintiff a duty "to exercise reasonable care in regard to the operation of GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services" (*Id.* ¶¶ 111, 119), and that Defendants have breached that duty "in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services in" various manners, including "Inadequate Claim Processing," "Inadequate Claim Investigation," "Delay in Payment," and "Expedited EAP [Emergency Assistance Payments] Denial." (*Id.* ¶¶ 113, 121.)

6. Count III of Plaintiff's Complaint, alleging negligence *per se*, alleges that "Defendant's conduct with regard to the operation of GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services is governed by the Oil Pollution Act of 1990" which "creates statutory standards that are intended to protect and benefit Plaintiff," and

3

that "Defendants' violations of these statutory standards constitute negligence *per se* under Florida law." (*Id.* ¶¶126-29.)

7. Count IV, for fraud, asserts that Defendants have falsely represented that "[t]he protocol under which GCCF operates is structured to be compliant with OPA and apply the standards of OPA." (*Id.* ¶ 132.)

8. Counts V (fraudulent inducement), VI (promissory estoppel), and VII (unjust enrichment) also depend on finding that the Defendants have violated OPA. (*Id.* ¶¶ 137, 143, 147.)

## FEDERAL QUESTION JURISDICTION

Federal District Courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This case arises under the Outer Continental Shelf Lands Act, which grants a federal district court subject-matter jurisdiction of a case or controversy "arising out of, or in connection with * * * any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C. § 1349(b)(1). Accordingly, in *Phillips v. BP p.l.c.*, 2010 WL 3257737 (N.D. Fla. Aug. 17, 2010), the plaintiff sued BP in state court for damages resulting from the Deepwater Horizon spill, BP removed the case to federal court, and the court denied plaintiff's motion to remand, ruling:

> When it exploded, the Deepwater Horizon was operating on the outer continental shelf. Its operations were part of the exploration for, and intended development and production of, continental-shelf oil.
>
> * * *
>
> As a matter of plain English, § 1349(b)(1) provides federal jurisdiction over the plaintiff's claim, because the claim arises out

4

of, and is connected with, the Deepwater Horizon's oil-related
operations on the continental shelf. That begins and ends the
proper analysis of the jurisdictional issue as presented in this case.

2010 WL 3257737, at *1.

This case also arises under OPA because, as shown above, all of Plaintiff's claims assert violations of OPA and will require an interpretation of OPA notwithstanding that Plaintiff's claims are purportedly asserted under state law. Because the claims turn on OPA, they trigger that statute's provision of exclusive federal jurisdiction. *See* 33 U.S.C. § 2717(b) (giving federal district courts "*exclusive* original jurisdiction over all controversies arising under this Act [OPA], without regard to the citizenship of the parties or the amount in controversy" (emphasis added)).

Accordingly, this Court has original federal subject matter jurisdiction over this action, giving Defendants the right to remove the case under 28 U.S.C. § 1441(a).

## DIVERSITY JURISDICTION

Federal District Courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between * * * citizens of different States." 28 U.S.C. § 1332. Plaintiff Andrew J. Ditch is a resident of Lee County, Florida. (Compl. ¶ 29.) Defendant Feinberg is a resident of Maryland. (*Id.* ¶ 30.) Defendant Feinberg Rozen is a District of Columbia limited liability partnership with its principal place of business in the District of Columbia. (*Id.* ¶ 31.)

Defendant William G. Green, Jr. is a resident of Florida; however, his presence should be disregarded for removal purposes because he has been named as a defendant solely to defeat jurisdiction and there is no possibility that Plaintiff can prove a cause of action against him. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). As shown above, all of Plaintiff's state law claims depend on his ability to prove a violation of OPA, which he alleges

5

provides the necessary standard of care for those claims. (*See, e.g.*, Compl. ¶¶ 111 &119.) But OPA provides no standard of care,[1] and Plaintiff will accordingly be unable to prove that Green has violated any federal standard of care that might give rise to a state law cause of action.

In addition, Plaintiff's claims against Green are facially invalid under Florida law:

- Green cannot be liable for gross negligence (Count I), because Plaintiff cannot possibly prove that Green knew of circumstances which constituted a "clear and present danger" to Plaintiff and yet still undertook "a conscious, voluntary act or omission * * * which is likely to result in injury."[2]

- Green cannot be liable for simple negligence (Count II) because nothing in OPA imposes a duty on Green to conform to a certain standard of conduct for claims intake, review, evaluation, or settlement of claims, and Green's alleged actions have caused Plaintiff no harm because Plaintiff remains free to recover his damages in a suit against BP or a claim to the National Pollution Funds Center. *See* note 1, *supra; Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (setting out the elements of negligence).

- Count III, for negligence *per se*, cannot possibly succeed because, as we have seen, OPA provides no explicit or implicit right of action for alleged process-related claims.[3] When, as here, the statute displays "no evidence in the language or the legislative history of a legislative intent to create a private remedy," negligence *per se* claims must be dismissed.[4]

- Counts IV and V, for fraud and fraudulent inducement, require Plaintiff to prove reliance. Although Plaintiff alleges that he relied on allegedly false statements by Defendants that led him to present his claim to the GCCF and to "refrain from commencing an action in court against the responsible party or presenting the claim to the" Oil Spill Fund (Compl. ¶ 140-41), OPA *required* him to submit his claim first to the OPA responsible party (*i.e.*, BP, and hence the GCCF acting on

---

[1] OPA says nothing at all (least of all prescribes standards of care) about the claims process the responsible party must establish. Nor does it provide claimants with any right to a judicial appeal from a responsible party's refusal or failure to settle their claim within 90 days: their options are expressly limited by OPA to suing the responsible party in court or presenting their claim to the National Pollution Funds Center. 33 U.S.C. § 2713(c). Congress' intentional denial of a right of judicial appeal strongly supports the conclusion that OPA has no standard of care that might undergird a state court action.

[2] *Hager v. Live Nation Motor Sports, Inc.*, 665 F. Supp. 2d 1290, 1294 (S.D. Fla. 2009) (citing *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1377 (11th Cir. 2000) (quoting *Sullivan v. Streeter*, 485 So. 2d 893, 895 (Fla. Dist. Ct. App. 1986))).

[3] *Welker v. Southern Baptist Hosp. of Florida, Inc.*, 864 So. 2d 1178, 1182 (Fla. Dist. Ct. App. 2004).

[4] *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985-87 (Fla. 1994); *Florida Physicians Union v. United Healthcare of Fla., Inc.*, 837 So. 2d 1133, 1137 (Fla. Dist. Ct. App. 2003).

BP's behalf) (*see* § 2713(c)) and an allegedly false statement is immaterial if the plaintiff would have taken the same action whether the statement had been made or not.[5] Moreover, OPA authorizes Plaintiff now to sue BP or present his claim to the Oil Spill Fund and thus, as a matter of law, Plaintiff has not lost that right and cannot show any detriment from any purported reliance on any alleged misrepresentation by Green.

- Count VI, for promissory estoppel, runs against Defendant GCCF only.

- Count VII alleges that Green has been unjustly enriched by delaying payment of Plaintiff's claims which has allowed Green to receive "a monthly payment for services which did not rise to the standards expected of [his] profession." *Id.* ¶ 148. But Plaintiff has conferred no benefit on Green and, even if Green himself *had* delayed paying Plaintiff's claims, that could not possibly have unjustly enriched him. *See Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006) (setting out the elements of unjust enrichment).

Thus, Defendant Green's presence should be disregarded, and complete diversity exists between the Plaintiff and the remaining Defendants. In addition, Plaintiff claims damages of approximately $1,570,357.00 (Compl. ¶ 69). Hence, the amount in controversy exceeds $75,000.

Accordingly, this Court has original diversity jurisdiction over this action, and the Defendants therefore have the right to remove the case under 28 U.S.C. § 1441(b).

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

Removal to Proper Court. In accordance with 28 U.S.C. § 1446(a), Defendants are filing this Notice of Removal in the federal district court and division embracing the state court where the State Court Action was filed.

Removal is Timely. Defendants Kenneth Feinberg and Feinberg Rozen, LLP were served with the Complaint on June 17, 2013. This Notice is timely filed within 30 days of service, as required by 28 U.S.C. § 1446(b).

---

[5] *Riback v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. Dist. Ct. App. 1997); *Morris v. Ingraffia*, 154 Fla. 432 (19440.

7

Pleadings and Process. Attached hereto as Exhibit 2 are copies of all process, pleadings and orders served on Defendants in the State Court Action, as required by 28 U.S.C. § 1446(a).

Notice. Attached hereto as Exhibit 3 is a copy of the Notice of Removal to Plaintiff, which will be promptly served upon Plaintiff and filed with the Clerk of the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, as required by 28 U.S.C. §§ 1446(a), 1446(d). Attached hereto as Exhibit 4 is a copy of a Notice of Filing of Notice of Removal, which will be promptly served upon Plaintiff and filed with the Clerk of the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, as required by 28 U.S.C. § 1446(d).

Consent to Removal. All Defendants file this Notice of Removal and consent to removal of this case.

Signature. This Notice of Removal is signed under Fed. R. Civ. P. 11, as required by 28 U.S.C. § 1446(a).

Bond and Verification. No bond is required in connection with this Notice of Removal and this Notice need not be verified. *See* 28 U.S.C. § 1446 (as amended by Section 1016 of the Judicial Improvements and Access to Justice Act of 1988).

WHEREFORE, this action should proceed in the United States District Court for the Middle District of Florida as an action properly removed thereto.

Dated: July 16, 2013.

Respectfully submitted,

Eric S. Adams
Florida Bar No. 0090476
SHUTTS & BOWEN LLP
100 S. Ashley Dr., Suite 1500
Tampa, Florida 33602
Telephone: (813) 227-8122
Facsimile: (813) 229-8901
eadams@shutts.com
*Counsel for Defendants*

TPADOCS 19958219 1